SMITH & *als. in equity, versus* VIRGIN & *als.*

To a bill in equity setting forth the facts upon which the plaintiffs relied, and presenting the legal principle which they applied to the facts, three of the defendants neglected to enter an appearance. Three others appeared, but made no answer. The remaining thirteen filed their answers, and agreed with the plaintiffs to submit the action with its subject-matter to referees. On motion to accept the referees' award, it was *Held;* —

*that* those who agreed to the submission and were heard before the referees, with knowledge that the others had not concurred in the submission, must be considered to have waived the objection arising from that non-concurrence ; and

*that* it was competent for the referees to attach to the facts which were proved, their legal consequences, although at variance from the legal principle alleged in the bill.

By the articles of agreement, made by the members of an unincorporated association, for the regulation of their business affairs, it was stipulated *that* the capital stock should be divided into shares ; *that* the shares should be transferrable ; and *that* trustees should be appointed to manage the affairs, in whom all the property should vest in trust. In accordance with those regulations, trustees were appointed, made purchases of real and personal property, and proceeded to the transaction of business. Shares were from time to time transferred, until twenty-nine fortieths of them were held by one person.

*It was held,* that a sale by him, not of his shares, but of twenty-nine fortieths of all the land and property which had belonged to the company, was a dissolution of the association ; — and *that*

The persons, who owned the shares at the time of the dissolution, were entitled, according to the number of their shares, to all the avails and assets of the company, and liable to contribute, in the same proportions, to all the debts of the company.

BILL IN EQUITY.

Certain persons formed an unincorporated association for the manufacturing of scythes. ·

A code of articles was drawn up for the regulation of the company, prescribing the amount of joint capital stock to be $4000, in shares of $100 each, authorizing transfers of shares, and prescribing the mode of transfer, pointing out the mode of voting, and specifying what officers should be appointed, with their respective rights and duties, and among other things, providing that " the officers of this company should be a president, a secretary and a treasurer, who should constitute a board of trustees, in whom the capital and property of the

company should be vested," and clothing the trustees with power to purchase real and personal estate, and to conduct and carry on the business of manufacturing, and to dispose of the manufactured articles.

One of the articles provides that "the secretary shall record all transfers of shares on the books of the company."

The seventeenth article was that, "no party to these presents shall be discharged from his obligations, as a member of the company, by transfer of his share or shares, until the transfer is certified to the secretary; and no person, becoming a party by purchasing a share or shares, shall be entitled to the privilege of members, until he signs these articles."

The articles were signed by twelve individuals. The capital stock was subscribed, officers were chosen, a factory was erected, and materials for making scythes were purchased, and the work of manufacturing was progressed in.

By transfers of shares, frequent changes were made in the list of proprietors, — or in the proportions of their ownership.

The company became embarrassed in their money affairs. Some of the members respectively and from time to time paid a portion of the debts. No settlement was made.

Three of the members filed this bill in equity, against nineteen persons, charging them as members of the company. Among other things, the bill charged that land and other property, purchased by the company, are now held in trust for payment of the company debts. The prayer of the bill was, that those debts may be ascertained; also the amount of its rights, credits, assets, effects, and property, applicable to the payment of its debts; and also when any member or shareholder in the stock of said company, a party to this bill, became liable to the debts of said company and when he ceased to be liable, and what is the extent or amount of his liability; and that the Court will order that the rights, credits, assets, effects and property of the said company, in whosesoever hands of the members of said company or shareholders in the stock thereof, parties to this bill, the same may be, so far as

liable for the payment of the debts of the company, may be so placed and disposed of, as to satisfy and extinguish the just and equitable demands and claims against said company, so far as the same may be sufficient for that purpose ; and in case of the insufficiency of the company's rights, credits, assets, effects and property to pay and discharge all the just and equitable debts against said company, so far as the same is applicable, to ascertain the just and equitable proportion which the several parties to this bill ought to contribute to the payment of the company debts at the time of filing this bill of complaint, and order and decree the payment of the same accordingly, to the end, that there may be a full and final settlement of all the transactions and of all the accounts and demands for and against said company.

Three of the defendants appeared by attorney, but presented no answers in writing.  Three others entered no appearance.  The remaining thirteen appeared and put in written answers, and entered into an agreement with the plaintiffs that the bill and its subject-matter should be submitted to referees, the answers of the several defendants to have the same effect in the hearing as if tried before the Court.  So far as relates to matters brought before the full Court, the award of the referees was as follows : —

The stock was all subscribed for and officers elected pursuant to the articles, in April, 1838 : —

A mill site was purchased, and a dam and a factory building were erected ; iron, coal and tools were purchased ; the manufacturing of scythes was commenced about April, 1839, and was carried on until about the first of August, 1839, at which time the business operations of the company were discontinued : —

In these proceedings of the company large debts were incurred which chiefly constitute the subject-matter of the present suit : —

From the establishment of the company until January, 1841, shares were frequently transferred, and some of them went through several successive ownerships.  It is considered,

that each of these transfers, which substituted a new member instead of the former owner, created a new copartnership.

On the first day of September, 1841, one of the stockholders had become the owner of twenty-nine shares, and thereby had the power of controlling the company affairs.

On that day he, by a deed duly executed, sold and conveyed, not his shares, but twenty-nine fortieths of the tools, factory buildings and appurtenances. This act, being in subversion of the purposes, for which the association was formed, is considered to have been a dissolution of the copartnership.

The three plaintiffs and the nineteen defendants, were each of them owners of shares, some at one period, some at another.

The plaintiff Smith had owned fourteen of the shares. He transferred the last of them on the 26th day of April, 1839. Debts were at that time due to him from the company, and he afterwards paid a large amount of debts due from the company, for which he was liable, having been one of the copartners at the time when they were contracted. The other plaintiffs, Fisk and Hubbard, who still remain shareholders, also paid considerable amounts of debts, for which they were respectively liable, for the like reason. It is to recover for these sums that this bill in equity was instituted.

In the early stages of the case a question arose of deep interest to the parties. It was contended on the one hand, that the plaintiffs' remedy is alone for contribution against the persons, who composed the several copartnerships existing when the original debts were, from time to time, contracted. On the other hand it was contended, that (under the articles of association,) the plaintiffs are entitled to recover against the last copartnership, and, that, not merely for a contribution, but for the whole amount.

Upon this question each party claimed the law to be in his favor, and claimed, by the course of the argument, that the decision be made on legal principles. It is the question upon which most of the controversy hinges ; and upon it we consider the parties entitled to the opinion of the Court : —

It is therefore submitted for a legal decision.

The referees might properly enough perhaps wait here for

instruction. But the parties are desirous, that further progress be made as early as possible. Such progress can only be made by the presentation of an alternative report, and such a report we have concluded to offer, proceeding for the present merely upon the hypothesis that the plaintiffs' remedy is against the last copartnership, and for the whole amount.

Should this hypothesis be unsustained, the Court will have occasion at once to reject or recommit this award, but if sustained, then, of and concerning all the matters to us submitted, the following is our final award : —

The referees then proceeded to report the persons who composed the last copartnership, together with their respective interests ; the amounts due from the copartnership to each of the past and present members ; the indebtments due to the copartnership from each of the past and present members, and the resources of the company of every description, and who among the members had become insolvent, together with all other facts and details, needful to the formation of a final decree, upon the hypothesis before named.

The report was offered, and its acceptance was objected to, for the reasons stated in the decision of the Court.

*Emmons* argued in support of the award.

*Bronson, May* and *Morrill,* contra.

TENNEY, J. — The plaintiff and six of the defendants, move the acceptance of this report. Several are silent upon that question. Others make objections for the following reasons. The first is in reference to the jurisdiction of the referees, upon the ground, that all the defendants were not parties to the agreement to refer.

The defendants in the bill are nineteen in number. Thirteen of them appeared before the referees, and put in written answers. Three appeared by attorney, but did not answer in writing. No appearance was entered by the other three. Neither of the six defendants last named executed the agreement to refer the action.

Gilman L. Gale was the only one of those who did not

sign the agreement, that now interposes any objection to the acceptance of the award. Those who did not appear before the referees have not been prejudiced by the award, upon the hypothesis adopted, in any thing which makes them responsible. The parties who did appear, and who now make objection to the report, cannot be injured by any decree thereon, because their liability is made no greater by the failure of others to become parties to the agreement, or to appear before the referees. One only of those, who did not originally become parties to the reference, has been adjudged liable in any event to contribute towards the sum which is due from the copartnership, beyond the amount of its resources. And he is relieved on account of his admitted insolvency. By his appearance which is not represented to be limited to any particular purpose, he must be considered as having ratified the agreement, and actually submitted to the jurisdiction of the referees. He stands in the same category with those who authorized the reference.

No other whose name is on the agreement interposes any objection, or manifests any dissatisfaction. The parties to that agreement, having a full knowledge of the omission of some of the defendants to submit the subject-matter of the suit to referees, by their appearance, and a hearing before them upon the merits, have waived that objection and cannot be allowed now to revive it.

2. A further objection to the award is, that the referees did not decide upon all matters submitted, and that they passed upon questions not embraced in the bill, and therefore not in the submission ; or in other words, that the award does not follow the submission.

The object of the bill was an adjustment of the affairs between the plaintiffs and the company, and those who are liable to contribution, if the resources of the firm were insufficient to discharge the debts due from it. For this purpose the plaintiffs are as specific in their premises and in the statement of the facts as the knowledge possessed by them would probably allow. This was necessary in order that proof could be offered in support of all the allegations substantially made.

The prayer of the bill is, that the debts due and owing from the company at the time of filing the bill may be ascertained; and also its rights, credits and assets, effects and property, applicable to the payment of its debts, the time when any member or stockholder, party to the bill, became liable for its indebtedness, and when that liability ceased; and what are the extent and amount of his liability; and to order and direct that the rights, credits, assets, effects and property of the company in whosesoever hands, of the members or shareholders, they may be found, so far as liable for the payment of its debts, may be so placed and disposed of as to satisfy and extinguish the claims against the company, to the extent that they are sufficient for that purpose; and in the event that they shall be found insufficient, to ascertain the just and equitable proportion which the several parties to the bill ought to contribute to the payment of the company debts, at the time of filing the bill, and order and decree the payment of the same accordingly. And such other and further relief is prayed, in the premises, as is proper and suited to their case according to the principles and rules of equity.

Every part of the report is upon the matter which constitutes the premises of the bill, and falls within the prayer for relief. The debts due and owing from the company are specifically reported, both in reference to the creditors and the amount to each. The referees state the property and its character belonging to the company, which should be applied to the payment of its debts; they also report, subject to the opinion of the Court upon the facts proved, the time during which any member of the company or shareholder, party to the bill, was liable for its debts; also the extent and amount of his liability; and they award that the property of the company as reported by them, is to be appropriated toward the discharge of its liabilities, so far as it is sufficient, and that the deficiency having been ascertained in just and equitable proportions shall be paid accordingly by those who last composed the copartnership and are solvent.

It is true that an interest in the real estate and personal pro-

perty at one time belonging to the company, which were sold and conveyed by one of the stockholders, is claimed in the bill as being held in trust for the payment of the company's debts, and for the benefit of the shareholders, successively, and it is denied that any shareholder can legally claim the same or any part thereof for his exclusive benefit.

This is a statement of no fact but what is regarded by the plaintiffs as a principle in equity, applicable to the facts alleged. The principle contended for in the bill may have been erroneous, or the facts proved variant to some extent, from those alleged. Neither could restrict the referees in their duties, or authorize them to come to a conclusion which the facts shown, and the law, would not justify. They found the sale of the interest of one of the stockholders, and instead of the conclusion, that the interest was held in trust for the company by the purchaser, they regarded the copartnership dissolved.

It is further objected that the award does not follow the bill and subject-matter submitted, because it puts upon a portion of the shareholders the payment of all the debts, whereas the bill prays a contribution among the several parties to the bill, in equitable proportions.

The premises and the prayer of the bill do not furnish a basis for this objection. The language of the latter in this respect, is "to ascertain the just and equitable proportion which the several parties to this bill ought to contribute to the payment of the company debts." If any party to the bill ought not to contribute to the payment of the company debts at all, it is not a prayer that they shall be decreed to contribute.

Under this head it is contended that the referees having found that in some of the transfers of shares the sellers undertook to indemnify the purchasers against the outstanding debts of the company, the referees should have transferred this liability for such debts to the purchasers, as it was proposed they should do, and was improperly refused. The referees do not undertake to adjust the rights between individuals under the special agreements, but only such as arise under the partnership affairs. Neither does the bill in its frame seek an adjustment *inter*

*sese* among all the partners, but only as between the plaintiffs and defendants. The referees have not in the latter omitted to report upon the subject submitted. If there has been any omission, the first fault was not in the referees, and no advantage on account of any defect in this particular has been attempted in a proper manner.

The two first objections having a relation to the entire award, which would be fatal to its validity, if they were sustainable, are overruled.

3. The referees have made their award in its details, and in full, upon the legal hypothesis that under the association the partnership at the time of its dissolution consisted of those who then held the shares, and no others. At the hearing, that basis was denied to be correct in law, and the question is submitted by the referees to the Court with the facts found connected therewith. In a partnership at common law with no agreement to continue for any specified time, or to qualify in any manner the principles ordinarily applicable, a dissolution takes place on the assignment of the interest of any member. Story on Partnership, sect. 273. In such a case the assignee may be received as a partner in the place of the assignor. But it not only becomes a new firm, but the incoming member has no concern as a partner with the firm before the assignment, and is in no manner liable as such for its obligations. When an association consisting of many members is formed with the power of each, to some extent at least, to increase the number by the transfer of shares without the consent of the other members, it is obvious that unless the rules of ordinary common law partnerships are modified and in some respects restricted, their affairs will be exposed to become complex, involved and ruinous. It would be strange indeed if they could be prosperous for a long time, if each had the power to bind the company in every thing falling within its legitimate scope.

By the rules of the association, the whole business of the company was to be done by trustees, having duties in most respects similar to those of directors in certain private corporations. This was suited to render more simple the opera-

tions of the company, and prevent the want of concert which might otherwise be attended with great derangement in the prosecution of its common affairs.   The members of the company had no other duties to perform than to elect its officers. The officers were the trustees, who were to hold all the property belonging to the company, and to dispose of the manufactured articles.   They were required to render in at every annual and semi-annual meeting an account exhibiting in detail the precise situation of the property affairs, and business of the company, and of their doings for the current year. Under these regulations, if the association in other respects were like partnerships at common law, the settlements of the company with its individual members would be attended with great embarrassment.   The transfer of interests in the smallest amount allowable, might be made daily, and if the changes of the firm were to be followed by the adjustment of the affairs of each copartnership, as it came into existence and afterwards expired, it would fail to be successful, and be attended with great perplexity, and occasion endless disputes.

The accounts of the trustees, which they were required to exhibit, would well inform the shareholders whether the company was prosperous or otherwise, and thereby the value of the shares could be ascertained with great accuracy.   If it was the intention of the company that the transfer of a share should carry with it all the privileges and all the liabilities of the holder as incidental thereto, it would render the settlements required by the company with its individual members easy and simple, and the business would be carried on upon the same principles which ordinarily prevail in an incorporated stock company.   The income as it should accumulate would follow the share whenever a dividend should be made, and the share would be subject to the debts of the company, and the holder himself personally liable after the company property should be exhausted, without reference to the time when the income should be received, or when the debt should be contracted.   This would be so in harmony with the wants of

the association, that it would be surprising if no such provision should be found in some form in the articles adopted.

By the 17th article no party to these presents shall be discharged from his obligations as a member of the company, by the transfer of his share or shares until the transfer is certified, and no person becoming a party by the purchase of a share or shares shall be entitled to the privilege of members till he signs these articles.

It was intended that the evidence of membership, and the time when it commenced, and when it ended, should be proved by the party's own signature upon the books of the company. The outgoing member was to escape none of his liabilities while the company existed, till this evidence of the change was afforded.

When the transfer was thus certified to the secretary, it is clearly implied that the seller was relieved from all liability. And if so, it is implied that they were transferred to the purchaser as an incident of the share, consequently the privileges and benefits attached to the share before the transfer, vested in the purchaser on his signing the articles, and ceased in the seller. The last copartnership was that composed of those who were members and shareholders at the time of its dissolution, and they were liable for the debts of the company beyond the amount belonging thereto.

The objection that no decree can be entered against the last copartnership, because the award is in the alternative, and does not determine on the two hypotheses, has no legal foundation. On one hypothesis the whole matter submitted is examined, and an award made. If that hypothesis is correct the award was intended by the referees to be complete, and a decree in favor of the plaintiffs will follow. If it had been otherwise, the rule would have been discharged, or the report recommitted under the decision of the court upon the question of law raised. The hypothesis on which parts of the award are based, being found correct, the other alternative would be erroneous, and all further proceedings thereunder would be useless.

The other objections all look to the award as intended by the referees to be final, both in law and fact. One question only was submitted to the Court for their decision. So far as other matters reported depend upon the correctness of this principle assumed by the referees, no objection is sustainable. On all other questions the award is conclusive. It is not improper to remark however, that if the referees had reported the facts upon all the points raised, and submitted the law applicable thereto, it is not perceived that the result would be different.

The plaintiffs are entitled to a decree in pursuance of the award.